# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMONDZA HUNTER,<br><br>Plaintiff,<br><br>vs.<br><br>D. ESTEE (aka D. SELLERS), H. FAST; S. CANDALOT; S. GARCIA; M.CORBIN; R. HOUSTON; D. BRAVO; G. GALAZA,<br><br>Defendants. | Civil No.   01cv2212 BEN (WMc)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. No. 119]** |

## I. Procedural Background

This matter comes before the Court on Defendants' Motion for Summary Judgment pursuant to FED.R.CIV.P. 56. [Doc. No. 119]

The Court has considered the papers filed in support of Defendants' motion, Plaintiff's Opposition, Defendants' Reply, as well as all relevant pleadings and documents in the Court's file. For the following reasons, the Court **GRANTS** Defendants' Motion.

## II. Procedural History

Before the Court is Plaintiff Demondza Hunter's ("Plaintiff") Second Amended Complaint ("SAC"), filed pursuant to the Civil Rights Act, 42 U.S.C. § 1983. On April 13,

2004, United States District Judge John A. Houston ruled on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint which was granted in part and denied in part [Doc. No. 80]. *See* April 13, 2004 Order at 13. Specifically, Judge Houston granted Plaintiff's request to voluntarily dismiss all claims against Defendant Streeter, denied Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment due process claims, granted Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment equal protection claims without leave to amend, and denied Defendants' request for qualified immunity. *Id.* Defendants were ordered to file an Answer as to the remaining Fourteenth Amendment due process claim. *Id.* at 14.

On October 24, 2005, Defendants filed a Motion for Summary Judgment. Thereafter, Plaintiff filed his "Statement of Undisputed Facts" which the Court has construed to be his Opposition, to which Defendants have Replied.

The Court has advised Plaintiff of his rights and obligations to oppose Defendants' Motion pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc)[1]. Because Plaintiff was not initially notified of his rights pursuant to *Klingele* and *Rand* at the time the Defendants filed their motion, Plaintiff was permitted the opportunity to file a Supplemental Opposition. *See* May 11, 2006 Order at 4. Later Plaintiff requested an extension of time to file a Supplemental Opposition, as well as his own Motion for Summary Judgment. This request was granted and Plaintiff was given an extension of time to file both documents. *See* August 4, 2006 Order at 5-6. However, Plaintiff filed another request for extension of time to respond to Defendants' Motion on August 4, 2006 which was denied by this Court on August 28, 2006.

---

[1] *Klingele* and *Rand* together require the district court "'as a bare minimum, [to provide a pro se prisoner] with fair notice of the requirements of the summary judgment rule.'" *Klingele*, 849 F.2d at 411 (quoting *Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C. Cir. 1968)). "It would not be realistic to impute to a prison inmate ... an instinctual awareness that the purpose of a motion for summary judgment is to head off a full-scale trial by conducting a trial in miniature, on affidavits, so that not submitting counter affidavits is the equivalent of not presenting any evidence at trial." *Jacobsen v. Filler*, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (internal quotation omitted). Actual knowledge or any level of legal sophistication does not obviate the need for judicial explanation. *Klingele*, 849 F.2d at 411-12. Thus, the district court is required to "tell the prisoner about his 'right to file counter-affidavits or other responsive materials and [to][ alert[] [him] to the fact that his failure to so respond might result in the entry of summary judgment against him.'" *Jacobsen*, 790 F.2d at 1365 n.8 (quoting *Klingele*, 849 F.2d at 411).

On June 27, 2006, Plaintiff filed a request for leave to amend his Second Amended Complaint in which he sought to only amend his Second Amended Complaint to note that he verified the facts contained therein under penalty of perjury. The Court granted this request on August 4, 2006.[2] In this same request, Plaintiff sought leave to add a statement to his Declaration attached as Exhibit "1" to his Statement of Undisputed Facts also indicating that his declaration in support of his Opposition to Defendants' Motion was signed under penalty of perjury. He has attached this proposed supplement as Exhibit "B" to his request filed on June 27, 2006. Because Plaintiff filed this request to supplement his Opposition in the time previously permitted by the Court, the Court hereby **GRANTS** Plaintiff's Motion filed on June 27, 2006 in its entirety.[3]

While this case was initially referred to the Honorable Magistrate Judge William McCurine, Jr. pursuant to 28 U.S.C. § 636(b)(1)(B) for disposition, the Court has determined that a Report and Recommendation regarding the disposition of Defendants' pending Motion for Summary Judgment is unnecessary. *See* S. D. CAL. CIVLR 72.3(a) (assigning "[a]ll of the District's civil § 1983 prisoner caseload" to the District's magistrate judges for disposition either upon consent of all parties, or in absence of unanimous written consent, "upon submission of proposed findings and recommendations to the district judge, unless the district judge orders otherwise."). This matter has been submitted on the papers for determination without oral argument pursuant to S.D. CAL. CIVLR 7.1.d.1.

---

[2] Pursuant to the Court's August 4, 2006 ruling, Plaintiff's Second Amended Complaint is verified under penalty of perjury. *See Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (holding that a complaint or motion duly verified under penalty of perjury pursuant to 28 U.S.C. § 1746 may be used as an opposing affidavit under FED.R.CIV.P. 56.).

[3] In Defendants' Reply to their Motion for Summary Judgment, they seek to strike Plaintiff's declaration because he fails to "attest to the information therein under penalty of perjury." *See* Defs.' Reply at 2. However, because Plaintiff sought relief to amend his declaration to include this verification in a timely manner as evidenced by the Court's ruling, Defendants' request to strike this declaration is **DENIED**. Moreover, the Court notes that Defendants are seeking similar relief from the Court when they failed to provide the court with the required authenticating pages from Plaintiff's deposition transcript. Because there is no prejudice to Plaintiff, the Court hereby **GRANTS** Defendants' Ex Parte Application for Leave to Supplement Exhibit "B" to Defendants' Memorandum of Points and Authorities in Support of Their Motion for Summary Judgment.

### III. Factual Allegations

Plaintiff was incarcerated at Calipatria State Prison ("Calipatria") in 1999 and housed in the general population. *See* Plaintiff's Stmt. of Undisputed Facts ("SOF") No. 2; Defs.'s Ex. B, Deposition of Plaintiff at 48:24-53:12. On February 5, 1999, Plaintiff was charged with a CDC 115 Serious Rules Violation ("SRV") Report alleging Plaintiff's participation in the stabbing of another inmate.[4] *See* Pl.'s SOF at 3. As a result, Plaintiff was placed in Administrative Segregation ("Ad-Seg") pending a disciplinary hearing on the charges. *Id.* On March 5, 1999, Defendant Estee (a.k.a. "Sellers") was assigned as the "investigative employee" to assist Plaintiff in his defense for his disciplinary hearing. *Id.* at 11; Pl.'s Depo at 95:17-21. In his Second Amended Complaint, Plaintiff claims the role of Defendant Sellers was to "gather evidence, interview witnesses" and "prepare a written report disclosing her findings of facts and conclusion for [Plaintiff's] defense." *See* SAC at 11. Plaintiff alleges that Defendant Sellers failed to gather and present evidence that would have exonerated him at the SVR hearing. *Id.* at 12; SOF at 13; Pl.'s Depo at 95:17-21, 97:3-14.

Defendant Fast was the correctional officer assigned as the senior hearing officer to adjudicate Plaintiff's SVR hearing. *See* SOF at 14. Plaintiff claims that Defendant Fast violated his due process rights when he found Plaintiff guilty of the Serious Rules Violation and imposed punishment of 420 days in the "SHU"[5] at Corcoran State Prison ("Corcoran"). *Id.* at 17-23. Specifically, Plaintiff alleges that Defendant Fast excluded Plaintiff from the SVR hearing and denied Plaintiff the opportunity to present his defense in violation of his due process rights. *Id.*

After Plaintiff appeared before the Institutional Classification Committee ("ICC") and the punishment imposed was upheld by the ICC, Plaintiff appealed Defendant Fast's decision through the administrative grievance process. *Id.* at 24-25. Plaintiff claims Defendants Candalot

---

[4] CAL. CODE REGS., tit. 15 § 3312(a)(3) provides that "[w]hen misconduct is believed to be a violation of law or is not minor in nature, it shall be reported on a CDC Form 115 (Rev. 7/88), Rules Violation Report." Depending on the seriousness of the charge, an inmate may be "retained in regularly assigned housing," or, like Plaintiff, may be "placed in segregated housing pending the disciplinary proceedings." *Id.* § 3312(a)(3)(A) & (B).

[5] SHU is an acronym for Security Housing Unit. *See* CAL. CODE REGS., tit. 15 § 3341.5(c). "An inmate whose conduct endangers the safety of others or the security of the institution shall be housed in a SHU." *Id.*

1  and Garcia, who were assigned to review and investigate Plaintiff's grievance regarding his
2  claims of due process violations during his hearing, denied his appeal. *See* SOF at 26-31; Pl.'s
3  Depo at 64:19-22. As a result, Plaintiff was transferred to Corcoran on June 24, 1999 to begin
4  his disciplinary sentence of 420 days in the SHU. *See* SOF at 35; Pl.'s Depo at 52:14-53:20.

5  Plaintiff appealed to the Director's Level of Review claiming that he was denied due
6  process at his SVR hearing. *See* SAC at 8. On September 14, 1999, Linda Melching, Chief of
7  the Inmate Appeals Branch, found that due process was denied Plaintiff at his disciplinary
8  hearings and ordered that the outcome of the SVR hearing be vacated and that Plaintiff be given
9  a new hearing. *Id.* Plaintiff alleges that Melching personally spoke with Defendant Houston
10 telephonically and informed Houston of her decision. The order was distributed to Houston,
11 Corbin, Streeter, Bravo and Galaza and this decision instructed Defendants to ensure Plaintiff
12 was removed from Ad-Seg and provided with a new SVR hearing. *Id.* at 8, 25. Plaintiff alleges
13 that these Defendants failed to carry out the procedures set forth in the directions by Linda
14 Melching. *Id.* at 26. As a result, Plaintiff spent an additional 200 days in the SHU at Corcoran.
15 *Id.* at 27. On April 25, 2000, Plaintiff was transferred to Salinas Valley State Prison ("Salinas").
16 Plaintiff was granted a new SVR Hearing at Salinas and all charges against Plaintiff were
17 dismissed on August 14, 2000. *Id.* at 9.

18 **IV. Motion for Summary Judgment per FED.R.CIV.P. 56(c)**

19 Defendants seek summary judgment on the grounds that there are no genuine issues of
20 material facts to support Plaintiff's Fourteenth Amendment due process claim.

21 **A.    Standard of Review**

22 Summary judgment is appropriate if there is no genuine issue as to any material fact, and
23 the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56(c). The moving
24 party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H.*
25 *Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party must identify the pleadings,
26 depositions, affidavits, or other evidence which the moving party "believes demonstrates the
27 absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986).
28 "A material issue of fact is one that affects the outcome of the litigation and requires a trial to

1  resolve the parties' differing versions of the truth." *SEC v. Seaboard Corp.*, 677 F.2d 1301,
2  1306 (9th Cir. 1982).

3        The burden then shifts to the nonmoving party to establish, beyond the pleadings, that
4  there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. To successfully rebut a properly
5  supported motion for summary judgment, the nonmoving party "must point to some facts in the
6  record that demonstrate a genuine issue of material fact and, with all reasonable inferences made
7  in the plaintiff[]'s favor, could convince a reasonable jury to find for the plaintiff[]." *Reese v.*
8  *Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing FED.R.CIV.P. 56;
9  *Celotex*, 477 U.S. at 323).

10       **B.**    **Fourteenth Amendment Due Process Claim**

11       Defendants argue that Plaintiff's Fourteenth Amendment due process claim is
12 unsupportable as Plaintiff did not have a liberty interest implicated when he was placed in the
13 Corcoran SHU. *See* Defs.' Mot. at 3. Plaintiff argues that a liberty interest existed when he was
14 left in the SHU for more than 200 days following the determination by the Director of Appeals
15 that his due process rights at his disciplinary hearing had been violated. The Due Process Clause
16 prohibits states from "depriving any person of life, liberty, or property, without the due process
17 of law." U.S. CONST. AMEND. XIV.

18       The procedural guarantees of due process apply only when a constitutionally-protected
19 liberty or property interest is at stake. *See Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974).
20 In order to invoke the protection of the Due Process Clause, Plaintiff must first establish the
21 existence of a liberty interest. *Wilkinson v. Austin*, 545 U.S. 209, 125 S.Ct. 2384 (2005); *Sandin*
22 *v. Conner*, 515 U.S. 472 (1995). In *Sandin*, the Supreme Court "refocused the test for
23 determining the existence of a liberty interest away from the wording of prison regulations and
24 toward an examination of the hardship caused by the prison's challenged action relative to the
25 'basic conditions' of life as a prisoner." *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996)
26 (citing *Sandin*, 515 U.S. at 484); *McQuillion v. Duncan*, 306 F.3d 895, 902-03 (9th Cir. 2002)
27 (noting that *Sandin* abandons the mandatory/permissive language analysis courts traditionally
28

1 looked to when determining whether a state prison regulation created a liberty interest which
2 required due process protection).

3     Thus, "[a]fter *Sandin*, it is clear that the touchstone of the inquiry into the existence of
4 a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not
5 the language of regulations regarding those conditions but the nature of those conditions
6 themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson*, 125 S.Ct. at 2394.
7 The *Sandin* test requires a case-by-case examination of both the conditions of the prisoner's
8 confinement and the duration of the deprivation at issue. *Sandin*, 515 U.S. at 486.

### 1. Plaintiff's Liberty Interest in Avoiding SHU Confinement

10     The Court must first determine whether Plaintiff has established a protected liberty
11 interest. Accordingly, under *Sandin*, the Court must determine whether the sentence to
12 Corcoran's SHU and the time spent in the SHU following the directive to vacate Plaintiff's
13 disciplinary conviction "imposes atypical and significant hardship on the inmate in relation to
14 the ordinary incidents of prison life." *Id.* at 484. In *Sandin*, the Court found there were three
15 factors to consider when determining whether disciplinary segregation imposes atypical and
16 significant hardship: "(1) disciplinary segregation was essentially the same as discretionary
17 forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the
18 general population showed that the plaintiff suffered no "major disruption in his environment";
19 and the length of the plaintiff's sentence was not affected." *Jackson v. Carey*, 353 F.3d 750, 755
20 (quoting *Sandin*, 515 U.S. at 486-87).

21     Defendants argue that Plaintiff has failed to establish a protected liberty interest in
22 remaining free from disciplinary segregation because his sentence to the Corcoran SHU did not
23 subject him to atypical and significant hardships in comparison to the time that he spent in
24 Administrative Segregation ("Ad-Seg") at Calipatria State Prison ("Calipatria"). It is undisputed
25 that from the time Plaintiff was removed from general population to the ultimate reversal of his
26 disciplinary conviction, he spent approximately 113 days in Ad-Seg at Calipatria and
27 approximately 307 days in the SHU at Corcoran. *See* SAC ¶¶ 14, 20, 25. It is further undisputed
28 that on September 14, 1999, Linda Melching, Chief of the Inmate Appeals Branch, issued a

1  decision in which the Institution Classification Committee ("ICC") was instructed to vacate
2  Plaintiff's SHU term and hold a new hearing regarding the inmate battery charges against
3  Plaintiff. *See* Pl.'s SOF at 45; Pl.'s Ex. "A," Director's Level Appeal Decision dated September
4  14, 1999. According to this Decision, Linda Melching indicates that she personally discussed
5  this issue with Defendant Houston. It is also undisputed that Plaintiff was not released from the
6  Corcoran SHU until April 25, 2000, nearly six months later, when Plaintiff was transferred to
7  Salinas Valley State Prison. *See* Pl.'s SOF at 68.

8      Defendants contend that Plaintiff must establish that the conditions in the Corcoran SHU
9  differed significantly from those found in the Calipatria Ad-Seg rather than the conditions found
10 in the general inmate population. *See* Defs.' Mot. at 5 (citing *Serrano v. Francis*, 345 F.3d 1071,
11 1078 (9th Cir. 2003). Plaintiff argues that the conditions he was subjected to in the SHU were
12 atypical and significant whether you compared them to conditions found in the general
13 population or Ad-Seg. While Plaintiff was in general population he contends that he was a
14 member of a "Work Group Privilege Group" that earned him, among other things, good-time
15 credits, allowed him one-half of the monthly canteen draw, collect calls to family members,
16 physical contact visits from family and friends, permission to retain personal property items
17 worth in excess of $2000, ability to walk freely to the dining hall seven days a week, participate
18 in organized sports seven days a week, attend religious services, regular visits to the law library,
19 orthopedic shoes and extra cotton blankets. *See* Pl.'s Decl. at 4. While in the SHU at Corcoran,
20 Plaintiff contends that he was restricted to his cell for 23 hours a day, allowed one hour of
21 exercise five days a week, permitted non-contact visits only, suffered forfeiture of some of his
22 personal property, and was not allowed communication with other inmates. *See* Pl.'s SOF at 40,
23 44. These facts are not disputed by Defendants.

24     Viewing the evidence in the light most favorable to Hunter, Having considered the
25 conditions in Plaintiff's particular case, the Court finds as a matter of law that Hunter's
26 placement did not subject him to an atypical and significant hardship in relation to the ordinary
27 incidents of prison life. *See e.g., Chhoun v. Woodford*, slip op., Case No. C 03 3219 SI, 2005
28 WL 1910930 (N.D. Cal. Aug. 10. 2005) (and cases cited therein at *7-8). The conditions

1 Plaintiff experienced while in the Corcoran SHU are similar to those conditions likely found at
2 most solitary confinement facilities. Moreover, it is unlike the confinement considered to be
3 atypical in the recent United States Supreme Court decision in *Wilkinson v. Austin*, 545 U.S. 209,
4 125 S.Ct. 2384 (2005). In *Wilkinson*, the Supreme Court found that there was a liberty interest
5 in avoiding confinement in the Ohio State Penitentiary ("OSP") due to two additional key
6 features which are missing in Hunter's case. First, the time to be spent by a prisoner when sent
7 to OSP is indefinite and is reviewed only once a year. Second, placement in OSP disqualifies
8 an otherwise eligible prisoner for parole consideration. *Id.* In Hunter's case, the duration was
9 fixed and he did not lose eligibility for parole.

10 Thus, the Court finds that the conditions Plaintiff was subjected to in the SHU did not
11 constitute an atypical and significant hardship in relation to the ordinary incidents of prison life
12 and does not give rise to a liberty interest in avoiding placement in Corcoran's SHU. *Wilkinson*,
13 125 S.Ct. at 2394-95; *Sandin*, 515 U.S. at 483.

14 **2.     Due Process Violations**

15 Even assuming, for the sake of argument, that Hunter had a liberty interest in remaining
16 out of Corcoran's SHU, his claim would fail because he was given all the process he was due
17 in connection with his disciplinary hearing. When Plaintiff was successful in the administrative
18 grievance process, any due process error relating to his initial disciplinary hearing was "cured."
19 *Wycoff v. Nichols*, 94 F.3d 1187, 1189 (8th Cir. 1996) (holding that when a disciplinary
20 conviction is reversed upon administrative review, such reversal cures any earlier due process
21 violations that may have occurred).

22 "Prison disciplinary proceedings are not part of a criminal prosecution, and the full
23 panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418
24 U.S. at 539. Due process in connection with a disciplinary hearing requires that the prisoner
25 receive: (1) written notice of the charges against him; (2) a brief period of time to prepare for
26 the hearing; (3) a written statement by the factfinder regarding the facts relied upon and the
27 reasons for the disciplinary action; (4) an opportunity to call witnesses and present documentary
28 evidence; and (5) an opportunity to seek the aid of a fellow inmate or prison staff for complex

1  matters. *Id.* at 563-70.  Here, while Plaintiff's due process rights may have been violated during
2  his initial disciplinary hearing (which led to his placement in Corcoran's SHU), it is undisputed
3  that Plaintiff ultimately received a new hearing where the original charges were dismissed, his
4  SHU term was vacated and his classification score was readjusted in his favor. *See* Defs.' SOF
5  at 7; SAC at ¶ 25; Pl.'s Decl. at 68.  Any procedural error that occurred in the underlying
6  disciplinary hearing was corrected during the administrative process and thus, there is no
7  compensable due process violation. *See Torricellas v. Poole*, 954 F.Supp. 1405, 1414 (C.D. Cal.
8  1997), *aff'd*, 141 F.3d 1179 (9th Cir. 1998).

9  Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment as to
10 Plaintiff's claims.

### V. Conclusion and Order

12 For all the reasons set forth in the Order the Court hereby **GRANTS** Defendants' Motion
13 for Summary Judgment pursuant to FED.R.CIV.P. 56.

14 The Clerk shall enter judgment for Defendants and close the file.

15 **IT IS SO ORDERED.**

17 DATED: September 19, 2006

Hon. Roger T. Benitez
United States District Judge